UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


REGINA L. WILEMON ET AL.                     CIVIL ACTION

VERSUS                                        NO: 08-1622

WASHINGTON MUTUAL HOME                        SECTION: "S" (4)
LOANS, INC. ET AL.


## ORDER AND REASONS

**IT IS HEREBY ORDERED** that Patricia Licciardi Insurance Agency, Inc.'s motion for summary judgment is **GRANTED,** and the claim is **DISMISSED**. (Document #60.)

### I. BACKGROUND

The property of Regina L. Wilemon and Ronald E. Wilemon (the Wilemons), located at 3201 Veronica Drive in St. Bernard Parish, Louisiana, was severely damaged from flood as a result of Hurricane Katrina. When the Wilemons filed a claim under their flood insurance policy, they learned from their mortgage company, Washington Mutual Home Loans, Inc. (Washington Mutual),[1] that the flood policy has been canceled because the property was not located within a

---

[1] Washington Mutual Bank is the successor in interest to Washington Mutual Home Loan, Inc. The original lender was Eustis Mortgage Company, which sold the mortgage to Fleet Bank, which sold it to Washington Mutual. Wells Fargo subsequently acquired the mortgage on the property.

"Special Flood Hazard Area." Washington Mutual advised the Wilemons that notice of cancellation had been sent to them prior to Hurricane Katrina. The Wilemons maintain that they did not receive notice of cancellation.

The original policy was issued on December 23, 1999. On September 25, 2000, the National Flood Services issued a flood insurance renewal premium notice, advising that the flood insurance policy would expire on December 23, 2000, and giving the Wilemons the option to renew and increase their coverage. The Wilemons did not increase the policy limits. The mortgage company received and paid the bill, and American National P & C Company (American National), a Write-Your-Own flood insurance carrier, issued a renewal declaration. Flood insurance premium bills were received and paid by Washington Mutual in 2001 and 2002, and American National issued renewal declarations.

On April 17, 2003, Washington Mutual advised the Wilemons that it was no longer going to collect premiums for flood insurance or be responsible for remitting flood insurance premiums. On September 24, 2003, American National mailed a flood insurance renewal premium notice to the Wilemons and to Washington Mutual advising of the expiration date of December 23, 2003, and requesting payment. On December 23, 2003, American National sent an expiration notice to the Wilemons and to Washington Mutual advising of the expiration of the flood insurance policy. The flood insurance policy issued by American National was not renewed. On August 29, 2005, the Wilemons did not have flood insurance when Hurricane Katrina struck.

The Wilemons filed a petition for damages in the 34th Judicial District Court for the

Parish of St. Bernard, State of Louisiana, against Washington Mutual; their insurance agent, Patricia Licciardi Insurance Agency, Inc. (Licciardi); and the administrator of the homeowners policy, The Louisiana Citizens Property Insurance Corporation (Citizens), alleging negligence.

Licciardi removed the case to federal court based on federal question jurisdiction because the matter involves the administration of a flood policy under the National Flood Insurance Program. Washington Mutual consented to the removal. The claims against Citizens[2] were dismissed, and the Wilemons filed an amended complaint adding American National as a defendant.

Licciardi filed a motion for summary judgment.

## II. DISCUSSION

### A. Legal standard

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); Fed. R. Civ. P. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial. Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986). The nonmovant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Little v. Liquid Air Corp.,

---

[2] On April 4, 2008, the Wilemons settled their claims against Citizens under the homeowners policy.

3

37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

**B. Peremption under Louisiana Revised Statute 9:5606**

Licciardi contends that the plaintiffs' claims are perempted under the one-year period set forth in La. Rev. Stat. 9:5606. She argues that she procured the flood insurance policy as requested in 1999, and that she assumed no other duty with regard to the Wilemons after the initial procurement. Licciardi argues that, even if there were a duty, the plaintiffs knew or should have known that they did not have flood insurance because notice was mailed on September 24, 2003, and December 24, 2003, and no renewal notice was received in September 2004 for the December 23, 2004, to December 23, 2005, policy period.

"Under Louisiana law, an insurance broker has a fiduciary responsibility to the insured as well as to the insurer, and he is liable for his own fault or neglect." Offshore Productions Contractors, Inc. v. Republic Underwriters Ins. Co., 910 F.2d 224, 229 (5th Cir. 1990). An insurance agent has a general duty to use reasonable diligence in placing the insurance requested and to notify the client promptly if the has failed to obtain the insurance. See Southern Athletic Club, LLC v. Hanover Ins. Co., 2006 WL 2583406 at *3 (E.D. La. 2006) (citing Karam v. St. Paul Fire & Marine Ins. Co., 281 So.2d 728, 730-31 (La. 19973)). "In order to recover for a loss arising out of the failure of an insurance agent to obtain insurance coverage, the plaintiff must prove: (1) an undertaking or agreement by the insurance agent to procure insurance; (2) failure of the agent to use reasonable diligence in attempting to place the insurance and failure to notify the client promptly if he has failed to obtain the insurance; and (3) actions by the agent warranting the client's assumption that the client was properly insured." Offshore Productions

4

Contractors, Inc. v. Republic Underwriters Ins. Co., 910 F.2d at 229. Generally, the insured is responsible for advising the insurance agent of the needed coverage and for reading the provisions of the insurance. Motors Ins. Co. v. Bud's Boat Rental, 917 F.2d 199, 205 (5th Cir. 1990).

> La. Rev. Stat. 9:5606 provides in relevant part:
>
> A. No action for damages against any insurance agent, broker, solicitor, or other similar licensee under this state, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide insurance services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered. However, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

Generally, subsequent renewals of insurance policies "do not operate to restart peremption." Dobson v. Allstate Ins. Co., 2006 WL 2078423 at *8 (E.D. La. 2006) (citing Biggers v. Allstate Insurance Co., 886 So.2d 1179, 1182-83 (La. Ct. App. 2004)). "In order for each renewal to be the basis of a separate tort, the complained of conduct must consist of separate and distinct acts, each of which gives rise to immediately apparent damages." Biggers, 886 So.2d at 1182; see also Sonnier v. Louisiana Farm Bureau Mutual Ins. Co., 924 So.2d 419, 422 (La.Ct. App. 2006) (a renewal may constitute a separate act if an insured requests specific coverage at the time of renewal).

Regina's deposition testimony, concurred in by Ronald, supports Licciardi's argument that the agent was not contacted or involved after the initial procurement of the policy. Regina identified a letter that Washington Mutual sent to her home on April 17, 2003, but testified that

5

she did not receive the letter until September 2005 when she evacuated to South Carolina. Regina's deposition at 53. It was her understanding from the letter that Washington Mutual was advising her in April 2003 that, pursuant to the FEMA flood maps, flood insurance was no longer required for her property. Specifically, Washington Mutual stated:

> You may choose to maintain your policy since the properties in your area might still be exposed to losses from flooding. Please contact your agent for direct billing, as Washington Mutual will no longer be responsible for remitting your flood premiums.

Id. at 55.

Regina further testified that she received at her home a notice that her flood insurance policy would expire on December 23, 2003. At the bottom of the notice was the following statement:

> This is not a bill.
> If you are now responsible for the payment of this premium, please contact your insurance agent and change the payor status of the policy.

Id. at 45. Regina stated that she did not recall calling Licciardi or Washington Mutual to ask them about the flood insurance or "ask [Licciardi] to do anything." Id. at 46, 69. On the December 9, 2003, statement from the mortgage company, the list of anticipated payments from the escrow account included mortgage insurance, county tax, and hazard insurance, but not flood insurance. The last flood insurance policy that was in effect was for the policy period December 23, 2002 to December 23, 2003. Id. at 105.

The court concludes that any cause of action against Licciardi for breach of a duty to procure adequate insurance would have accrued in 1999 when Licciardi procured the flood

insurance. There are no allegations that the Wilemons relied on any statements by Licciardi after the initial procurement. The Wilemons renewed the policy each year until 2003, and all renewal information and declarations came directly from Washington Mutual. The renewals do not operate to restart peremption because the Wilemons do not allege that they made any requests or relied on any conduct by Licciardi regarding their coverage during the annual renewal periods that constitutes separate and distinct acts which give rise to damages.

Accordingly, the claims against Licciardi are perempted by La. Rev. Stat. 9:5606. There are no disputed issues of material fact, and Licciardi is entitled to judgment as a matter of law

New Orleans, Louisiana, this  19th  day of January, 2010.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**